# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY P.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:18-cv-00777-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On April 17, 2018, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income pursuant to Title XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this matter is remanded for further administrative proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

On December 16, 2013, Plaintiff filed an application for Supplemental Security Income. (Administrative Record [AR] 30, 208-29.) Although Plaintiff initially alleged a disability onset date of February 25, 2010, she later amended that date to December 16, 2013. (AR 70-71.) Plaintiff alleged disability due to post-traumatic stress disorder, bipolar disorder, insomnia, schizophrenia, depression, personality disorder, anxiety, and hepatitis C. (AR 111-12, 127.) After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 30, 141.) At a hearing held on July 21, 2016, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). (AR 66-90.)

In a decision issued on October 26, 2016, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 30-41.) Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 16, 2013. (AR 33.) She had severe impairments consisting of hepatitis C, cirrhosis, sciatica, degenerative disc disease, neuropathy, depression, anxiety, and a history of substance abuse disorder. (*Id*.) She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 33-34.) She had a residual functional capacity for light work with additional limitations. (AR 34-35.) Plaintiff had no past relevant work. (AR 40.) She could perform other jobs existing in significant numbers in the national economy, specifically, the occupations of routing clerk, router, and mail clerk. (AR 41.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (*Id*.)

On March 14, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-7.) Thus, the ALJ's decision became the final decision of the Commissioner.

# DISPUTED ISSUE

The parties raise the following disputed issue: whether the ALJ properly relied on the vocational expert's testimony. (ECF No. 29, Parties' Joint Stipulation ["Joint Stip."] at 4.)

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

**A.  The ALJ's Step Five Determination.**

  **1.  Legal Standard.**

At step five of the Commissioner's five-step sequential evaluation process, "the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also* 20 C.F.R.

§ 416.966(b). An ALJ's determination at step five involves "exploring two issues." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). First, the ALJ must identify the types of occupations that a person with the claimant's limitations could perform. *See id.* Second, the ALJ must ascertain that such jobs exist in significant numbers in the national economy. *See id.* Both issues may require the assistance of a vocational expert. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001) (describing the VE's role in identifying suitable occupations); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (describing the VE's role in providing job numbers).

A VE's testimony about an occupation's suitability must be reconciled with the Dictionary of Occupational Titles ("DOT"). The DOT is the Commissioner's "primary source of reliable job information" and creates a rebuttal presumption as to a job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6, 1435 (9th Cir. 1995); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). An ALJ may not rely on a VE's testimony regarding the requirements of suitable occupations that the claimant might be able to perform without first inquiring of the VE whether his testimony conflicts with the DOT and without obtaining a reasonable explanation for any apparent conflicts. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p). "For a difference between an expert's testimony and the *Dictionary*'s listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). An ALJ may rely on VE testimony that contradicts the DOT only insofar as the record contains persuasive evidence to support the deviation. *Johnson*, 60 F.3d at 1435; *see also Tommasetti*, 533 F.3d at 1042; *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

A VE's testimony about job numbers must demonstrate that a "significant number" of jobs exist for the claimant in the national economy. The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of

jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). However, "work which exists in the national economy can be satisfied by work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." *Gutierrez v. Commissioner of Social Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (emphasis in original); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If either number is significant, the ALJ's finding about job numbers must be upheld. *See Beltran*, 700 F.3d at 390.

### 2. Background.

The ALJ's hypothetical question to the VE contemplated an individual with Plaintiff's age, education, and the following limitations:

> [T]his individual could be limited to occasionally lift, carry, push or pull up to 20 pounds. Ten pounds or less frequently. Standing, walking and sitting would be consistent with light work. Frequent postural. No climbing ladders, ropes or scaffolds. No work at unprotected heights, around moving machinery or other hazards. This individual can concentrate for two hour periods of time but would be limited to unskilled tasks. The work should be non-public with only occasional interaction with coworkers and supervisors. Should be [low] stress meaning no fast paced production or assembly line type work with only minimal changes in the workplace setting or routine.

(AR 87.)

The VE responded that such a person could perform work existing in significant numbers in the national economy. (*Id.*) Specifically, the person could perform three occupations: (1) routing clerk (DOT 222.687-022), which has 66,000 jobs in the national economy; (2) router (DOT 222.587-038), which has 28,000 jobs in the national economy; and (3) mail clerk (DOT 209.687-026), which has 20,000 jobs in the national economy. (AR 87-88.) The ALJ accepted the VE's testimony

to conclude, at step five, that Plaintiff could perform work existing in significant numbers in the national economy and therefore was not disabled. (AR 41.)

**3. Analysis.**

Plaintiff challenges each of the three occupations identified by the VE for its suitability or its existence in significant numbers. The Court considers each occupation in turn.

**a. Mail Clerk (DOT 209.687-026).**

The occupation of mail clerk requires, among other things, the following duties:

> Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter.

(DOT 209.687-026.) Moreover, the occupation of mail clerk requires "Reasoning Level 3," which means that the worker must be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving *several concrete variables* in or from standardized situations." (*Id.*) (emphasis added); *see also* Appendix C – Components of the Definition Trailer, 1991 WL 688702 (defining reasoning levels).

Plaintiff contends that the mail clerk occupation's requirement of Reasoning Level 3, which requires the ability to deal with problems involving "several

concrete variables," conflicts with her limitation to "unskilled" work "with only minimal changes in the workplace setting or routine." (Joint Stip. at 11.) The Court agrees. An occupation that requires a worker to employ Reasoning Level 3 by dealing with problems involving several concrete variables raises an obvious or apparent conflict with Plaintiff's limitation to unskilled tasks and only minimal changes in the workplace setting or routine. *See Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (finding an apparent conflict between Reasoning Level 3 and a claimant's limitation to "simple, *routine*, or repetitive work") (emphasis added); *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (finding an apparent conflict between Reasoning Level 3 and a claimant's limitation to "simple instructions and *routine* tasks") (emphasis added). The VE's testimony that a person with Plaintiff's limitations could perform the occupation of mail clerk raised an apparent and unresolved conflict with the DOT. Thus, the VE's testimony about that occupation was not substantial evidence in support of the ALJ's step five determination.

### b. Routing Clerk (DOT 222.687-022).

The occupation of routing clerk requires, among other things, the following duties:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. *May be designated according to work station as Conveyor Belt Package Sorter (retail trade)*. May sort sacks of mail and be known as Mail Sorter (r.r. trans.).

(DOT 222.687-022) (emphasis added.)

///

7

1    Plaintiff contends that the occupation's alternative designation as a
2 "conveyor belt package sorter" conflicts with her limitation to work with "no fast
3 paced production or assembly line type work." (Joint Stip. at 6-7.) The Court
4 agrees. Work that requires dealing with a conveyor belt raised an apparent and
5 obvious conflict with Plaintiff's restriction from assembly line type work.

6    The Commissioner disputes the existence of this conflict by pointing out that
7 the occupation only "may" involve a conveyor belt. (Joint Stip. at 13.) To be sure,
8 an ALJ is required to resolve DOT conflicts only about job requirements that are
9 "essential, integral, or expected." *See Gutierrez*, 844 F.3d at 808. Here, however,
10 the DOT's use of the word "may" is insufficient to demonstrate that the use of a
11 conveyor belt is not essential, integral, or expected of the routing clerk occupation.
12 Indeed, the DOT's description of the routing clerk occupation leaves open the
13 possibility that *all* jobs within that occupation require the use of a conveyor belt.

14    Finally, when an occupation is generally familiar to non-experts, a reviewing
15 court may appeal to common experience to determine that there was no conflict that
16 the ALJ had to address, even if the DOT suggests the possibility of a conflict. *See*
17 *Gutierrez*, 844 F.3d at 808 (relying on common experience to find that the
18 occupation of cashier does not involve overhead reaching, despite language in the
19 DOT stating it requires "frequent reaching"). Here, however, the occupation of
20 routing clerk is not sufficiently familiar to common experience for the Court to
21 conclude with confidence that the use of a conveyor belt is not essential, integral, or
22 expected for that occupation. *See Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th
23 Cir. 2017) (declining to rely on common experience to determine the essential,
24 integral, or expected tasks for the occupations of office helper, mail clerk, or
25 parking lot cashier). The VE's testimony that a person with Plaintiff's limitations
26 could perform the occupation of routing clerk raised an apparent and resolved
27 conflict with the DOT. Thus, the VE's testimony about that occupation was not
28 substantial evidence in support of the ALJ's step five determination.

### c. Router (DOT 222.587-038).

The final occupation identified by the VE, router, requires, among other things, the following duties:

> Stamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts.

(DOT 222.587-038.) Moreover, the occupation of router requires "Reasoning Level 2," which means that the worker must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." (*Id.*); *see also* Appendix C – Components of the Definition Trailer, 1991 WL 688702 (defining reasoning levels).

Plaintiff challenges the suitability and availability of this occupation in two respects. The Court addresses each contention in turn.

#### i. DOT conflict.

First, Plaintiff contends that the router occupation is unsuitable because its requirement of Reasoning Level 2, which requires the ability to deal with "a few concrete variables in or from standardized situations," conflicts with her limitation to work "with only minimal changes in the workplace setting or routine." (Joint Stip. at 10.) The Court disagrees. An occupation that requires a worker to employ Reasoning Level 2 by dealing with problems involving a few concrete variables does not raise an obvious or apparent conflict with Plaintiff's limitation to only minimal changes in the workplace setting or routine. Other district courts in the Ninth Circuit have made similar findings. *See*, *e.g.*, *Reyes v. Commissioner of Social Security*, 2018 WL 4204787, at *7 (E.D. Cal. Sept. 4, 2018) (finding no conflict between Reasoning Level 2 and a claimant's limitation to "a work environment with no more than occasional changes in routine"); *Swain v. Colvin*,

1  2015 WL 13237229, at *6 (D. Or. Dec. 11, 2015) (finding no conflict between
2  Reasoning Level 2 and a claimant's limitation to "unskilled work in a structured
3  setting with minimal changes in demand"); *Bement v. Astrue*, 2011 WL 7039958, at
4  *11 (W.D. Wash. Dec. 28, 2011) (finding no conflict between Reasoning Level 2
5  and a claimant's limitations to "simple workplace decisions with few workplace
6  changes"). The Court finds these decisions to be persuasive. Thus, Plaintiff has
7  not demonstrated that the router occupation is unsuitable because of an apparent
8  and unresolved conflict with the DOT.

### ii. significant number of jobs.

Second, in the alternative, Plaintiff contends that the router occupation is outdated or obsolete and therefore not available in significant numbers. (Joint Stip. at 7-9.) As noted, the VE testified that the router occupation has 28,000 jobs in the national economy. (AR 87-88.) According to the DOT, the router occupation requires that the worker "stamp, stencil, letter, or tag packages, boxes, or lots of merchandise to indicate delivery routes" and "read addresses on articles and determine route, using standard charts." (DOT 222.587-038.) Plaintiff contends that technological advances in computers and cellular phones have reduced the number of such jobs by making it obsolete to use "standard charts" to determine delivery routes. (Joint Stip. at 8.)

Reviewing courts must be cautious in finding an ALJ's reliance on a VE's testimony about job numbers unjustified because of obsolescence. *See Gallo v. Commissioner of Social Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir. 2011) ("Although the description in the [DOT] of the 'Addresser' job contains a seemingly antiquated reference to typewriters, the ALJ was nonetheless entitled to rely on the VE's testimony that the Addresser job exists in significant numbers in the national economy."); *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("We decline Bavaro's invitation to take judicial notice of the decline of the

photofinishing industry and deem the position infeasible for her."). However, reviewing courts are authorized to review an ALJ's step five determination for substantial evidence by relying on what is "common and obvious," even to non-experts. *See Gutierrez*, 844 F.3d at 807; *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) ("A reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy."); *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) ("[C]ommon sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted."); *see also Skinner v. Berryhill*, 2018 WL 1631275, at *5-*6 (C.D. Cal. Apr. 2, 2018) ("[I]t is not unreasonable to assume that the occupation of 'addresser,' which — as described by the DOT — provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in number . . . in light of technological advances.") (emphasis in original) (citing *Scott v. Colvin*, 2015 WL 11438598, at *13 (N.D. Cal. Dec. 9, 2015) (taking judicial notice of the fact that since the DOT was last updated in 1991, the increasingly common use of computers has likely reduced the need for the task of physical press clipping)).

Here, despite the DOT's apparently outdated language about routers using "standard charts" to determine delivery routes, the ALJ and the VE did not acknowledge the possibility that the description was outdated, which would have provided useful context for how the VE had calculated that 28,000 router jobs exist in the current national economy. Thus, the Court must accept at face value the VE's testimony that 28,000 router jobs, as described by the language of the DOT, exist in the current national economy. To be sure, what is commonly known about the national job market is inadequate to find that the occupation of router, as it is described in the DOT, is completely obsolete. But it is readily conceivable that technological advances in computers and cellular phones have led to the reduction, at least to a modest extent, in the number of router jobs that used to be performed

with "standard charts." Even a modest reduction of the 28,000 jobs the VE identified — such a reduction of 15 percent of that number because of technological advances — would mean that the number of available jobs is no longer significant. *See Gutierrez*, 740 F.3d at 529 (holding that 25,000 national jobs was a significant number but remarking that it "presents a close call"). Thus, a reasonable mind would not accept the VE's testimony that there are a sufficient number of router jobs, as they are described in the DOT, in the national economy to constitute a significant number.

### 3. Conclusion.

For the foregoing reasons, the Court cannot determine whether substantial evidence supports the ALJ's finding at step five. With respect to two of the three occupations, mail clerk and routing clerk, the apparent DOT conflict was unacknowledged and therefore unresolved. *See Rounds v. Commissioner Social Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. 2015) ("Because the ALJ did not recognize the apparent conflict . . ., the VE did not address whether the conflict could be resolved. As a result, we cannot determine whether substantial evidence supports the ALJ's step-five finding.") (citation and internal quotation marks omitted). With respect to the third occupation, router, the record does not contain "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that the occupation exists in significant numbers in the national economy. *See Gutierrez*, 740 F.3d at 522. Thus, reversal is warranted.

### B. Remand for further administrative proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally

sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Here, although the Court has found that substantial evidence does not support the ALJ's determination at step five, an award of benefits is inappropriate because ambiguities and essential factual issues remain as to Plaintiff's ability to perform work in the national economy. The proper course here is remand to the Commissioner for further consideration of the step five determination of whether Plaintiff can perform work existing in significant numbers in the national economy. *See Rounds*, 807 F.3d at 1004 and n.5 ("On remand, the ALJ must determine whether there is a reasonable explanation to justify relying on the VE's testimony[]" or "[a]lternatively, the VE may be able to identify other jobs that . . . are suitable for someone with Rounds' other limitations.").

Therefore, based on its review and consideration of the record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: August 6, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

13